## UNITED STATES v. BRUCE.

### Nos. 2086, 2120.

District Court, W. D. Kentucky.
Oct. 7, 1943.

Eli H. Brown, III, U. S. Atty., and J. D. Inman, Asst. U. S. Atty., both of Louisville, Ky., for plaintiff.

No attorney of record for the defendant.

SWINFORD, District Judge.

This case is before me on motion of the defendant, Floyd Bruce, to vacate and correct sentences and judgments which this Court gave and entered against him on the 19th day of May 1939.

The defendant was before the Court on two indictments, Indictments No. 2086 and No. 2120. The first of these indictments contained two counts. The first count charged a violation of the Act of May 18, 1934, c. 302, 48 Stat. 782, 18 U.S.C.A. § 408e, making it unlawful for a person to move in interstate or foreign commerce to avoid prosecution for a felony or to avoid giving testimony in any criminal proceeding in a place where the commission of a felony is charged. The second count of this indictment charges a violation of the Act of May 22, 1934, c. 333, Sec. 3, 48 Stat. 794, as amended by the Act of August 3, 1939, c. 413, Sec. 1, 53 Stat. 1178, 18 U.S.C.A. § 415, which makes it unlawful for a person to transport in interstate commerce stolen goods, securities or moneys of the value of $5,000 or more.

Indictment No. 2120 contains four counts. The first count charges a violation of Section 37 of the Criminal Code, 18 U.S.C.A. § 88, making it unlawful for two or more persons to conspire to commit an offense against the United States. It is alleged in the first count of this indictment that the defendant, with others, conspired to violate Sections 312 and 320 of Title 18 U.S.C.A., which makes it an offense to unlawfully steal, take and abstract mail matter from a United States mail pouch and to assault Arthur Mimms, a person having lawful charge, control and custody of the mail matter, and by placing in jeopardy, by the use of dangerous weapons, the life of such custodian and to wound him.

The second count of this indictment charges that the defendant committed the substantive offense, referred to in the first count, charged in Section 197 of the Criminal Code, 18 U.S.C.A. § 320. It is alleged in this count that the defendant, Floyd Bruce, and others, did assault, and aid and abet each other in assaulting, Arthur Mimms, a person having lawful charge and custody of United States mail matter with intent to rob, steal and purloin the mail matter.

The third count of the indictment charges the violation of Section 197 of the Criminal Code, 18 U.S.C.A. § 320. It is alleged that the defendant, with intent to rob, steal and purloin mail matter, did wound and kill, with dangerous weapons, Arthur Mimms, a person having lawful custody of the United States mail.

The fourth count of the indictment charges a violation of Section 194 of the Criminal Code, as amended, 18 U.S.C.A. § 317, which is the substantive offense set forth in the first count of the indictment. It is alleged that the defendant, with others, took, stole and abstracted from Arthur Mimms, a person employed by the post office establishment of the United States, mail matter containing Registered Article No. 195, which was lawfully in his custody.

To both of these indictments and to each count contained in them, the defendant entered a plea of "not guilty". A trial resulted in a verdict of "guilty" on each count in each indictment.

The defendant was sentenced on Indictment No. 2086 to five years on the first count and ten years on the second count, the sentences to run consecutively, or the sentence on count two not to be served until after sentence on count one was completed.

On Indictment No. 2120 the defendant was sentenced to two years on the first count, ten years on the second count, twenty-five years on the third count and five years on the fourth count, the sentences to be served consecutively, that is that the sentence on count one should be served first and the sentence on count two should not be served until after the sentence on count one; the sentence on count three not to be served until after sentence on count one and two; the sentence on count four not to be served until after sentence on counts one, two and three had been completed and that none of the sentences were to commence until the sentences on counts one and two in Indictment No. 2086 had been completed.

This made a total of fifty-seven years to be served.

The defendant contends that the Court erred in two respects in entering judgments on these sentences as above outlined:

First, that the offenses charged in the second and third counts in Indictment No. 2120 were for the identical offense and that the defendant was twice placed in jeopardy in violation of his constitutional rights as guaranteed by the Fifth Amendment. Second, that the Court lacked jurisdiction to impose the sentences and issue the commitments on the same day because the defendant had stood trial before a jury without the assistance of counsel and had five days in which to come into Court and give notice of appeal; that the sentences were imposed on the 19th day of May 1939 and that on the 24th day of May 1939, when the defendant should have been produced in Court to give notice of appeal or move for a new trial and take other proceedings, he was already committed to the Federal Penitentiary at Leavenworth, Kansas.

Since this defendant was without counsel either at the time of his arraignment or now of record in this presentation, I think it wise, even at the expense of being tedious, to review this entire proceeding and to consider every phase of this judgment and commitment.

In support of the charges contained in the indictment the United States offered proof to show that this defendant, with two companions, by the use of revolvers and a sub-machine gun, held up Arthur Mimms, a post office messenger, and took a mail pouch containing, among other things, $25,000. At the time of the commission of the offense they shot and severely wounded the Chief of Police of Gutherie, Kentucky.

The first question presented by the motion is the question of jurisdiction. The United States has briefed no other point in this case and apparently is content to rest its case solely upon the proposition that since the term at which the judgment was entered has expired, the Court cannot entertain the motion to correct the judgment.

This position might be termed the orthodox view or rule of jurisdiction. As a general rule it has been accepted without question and applied consistently by trial courts. In the case of Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797, the Court states the general rule in comprehensive language as follows:

"In this country all courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for that term. This is the case with regard to all the courts of the United States, and if there be exceptions in the State courts, they are unimportant. It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court.

"But it is a rule equally well established, that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which, by law, can review the decision. So strongly has this principle been upheld by this court, that while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the court. Brooks v. Burlington Railroad Company, 102 U.S. 107, [26 L.Ed. 91]; Public Schools v. Walker, 9 Wall. 603, [19 L.Ed. 650]; Brown v. Aspden's Adm'rs, 14 How. 25, [14 L.Ed. 311]; Cameron v. McRoberts, 3 Wheat. 591, [4 L.Ed. 467]; Sibbald v. United States, 12 Pet. 488, [9 L.Ed. 1167]; United States v. The Brig Glamorgan, [Fed.Cas.No. 15,214] 2 Curt. C.C. 236; Bradford v. Patterson, 1 A. K. Marsh., Ky., 464; Ballard v. Davis, 3 J. J. Marsh., Ky., 656."

In the later case of United States v. Mayer, 235 U.S. 55, page 67, 35 S.Ct. 16, 19, 59 L.Ed. 129, the Court, speaking through Mr. Justice Hughes, states the rule and gives authorities: "1. In the absence of statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was begun during that term. Hudson v. Guester, 7 Cranch 1, 3 L.Ed. 249; Cameron v. McRoberts, 3 Wheat. 591, 4 L.Ed. 467; Ex parte Sibbald, 12 Pet. 488, 492, 9 L.Ed. 1167, 1169; Bank of United States v. Moss, 6 How. 31, 38, 12 L.Ed. 331, 334; Bronson v. Schulten, 104 U.S. 410, 415-

417, 26 L.Ed. 797, 799, 800; Phillips v. Negley, 117 U.S. 665, 673, 674, 6 S.Ct. 901, 29 L.Ed. 1013-1015; Hickman v. Fort Scott, 141 U.S. 415, 12 S.Ct. 9, 35 L.Ed. 775; Hume v. Bowie, 148 U.S. 245, 255, 13 S.Ct. 582, 37 L.Ed. 438, 440; Tubman v. B. & O. R. R. Co., 190 U.S. 38, 23 S.Ct. 777, 47 L.Ed. 946; Wetmore v. Karrick, 205 U.S. 141, 149-152, 27 S.Ct. 434, 51 L.Ed. 745, 748-750; In re Metropolitan Trust Co., 218 U.S. 312, 320, 321, 31 S.Ct. 18, 54 L.Ed. 1051, 1054, 1055." And at a later place in the opinion the Court uses this language (235 U.S. 68, 35 S.Ct. 19, 59 L.Ed. 129): "In view of the statutory and limited jurisdiction of the Federal district courts, and of the specific provisions for the review of their judgments on writ of error, there would appear to be no basis for the conclusion that, after the term, these courts in common-law actions, whether civil or criminal, can set aside or modify their final judgments for errors of law."

The writs of error coram nobis and coram vobis are discussed in the Mayer case. It is pointed out that these ancient common law writs, which under certain states of fact, were proper to call to the court's attention errors or inaccuracies in matters of form or clerical errors or matters of fact, are no longer in usage but are replaced by the more practical method of calling such errors in the record to the court's attention by motion. Even these writs were not used to correct errors of law.

In the case of United States ex rel. Coy v. United States et al., D.C., 38 F.Supp. 610, 612, Judge Shackelford Miller, Jr., held that the court was without jurisdiction to consider such a motion and followed this time-hallowed rule that since the term at which the judgment was entered had expired the court was without power to review or modify the judgment. In that opinion Judge Miller said: "I find some authority holding that the general rule above referred to is not applicable in cases where the judgment shows upon its face that it is void and a nullity, in which event the District Court has jurisdiction to set it aside even after the term. Examples of this type of case are Mellon v. St. Louis Union Trust Co., 8 Cir., 240 F. 359; Farmers' & Merchants' Bank v. Arizona Mutual Savings & Loan Association, 9 Cir., 220 F. 1; United States v. Clatterbuck, D.C.Md., 26 F.Supp. 297. But the special circumstances existing in those cases do not appear to me to be ap-

plicable to the present case. The judgments imposed in the present case under counts one and two are not void judgments. The defendant was properly indicted, tried and convicted under separate statutes. He was properly before the court. The respective judgments were imposed under existing statutes. If any error was committed it was an error of law in holding both statutes applicable to the facts of the case. A plea of double jeopardy would have raised the issue the same as any other issue of law is raised by proper pleading for the court to pass upon."

On appeal the decision of Judge Miller was affirmed without formal opinion. 6 Cir., 124 F.2d 1019. The order of affirmance states that the order dismissing the petition to correct the sentence and judgment entered against Coy is in all things affirmed upon the grounds and for the reasons set forth in the opinion of the district judge. It must, therefore, be concluded that the Appellate Court for this Circuit has ruled upon this question of jurisdiction contrary to the position of the defendant here and that this Court is therefore bound by that decision unless at a later time the court has reversed or modified this ruling or the Supreme Court of the United States has ruled to the contrary. It should be noted that the opinion of Judge Miller was handed down on May 9, 1941 and his decision affirmed on January 16, 1942.

I cannot reconcile this conclusion with the rule laid down in the case of Holiday v. Johnston, 313 U.S. 342, 550, 61 S.Ct. 1015, 85 L.Ed. 1392. In that case, Holiday applied to the District Court of the Northern District of California for a writ of habeas corpus in which he alleged that he was unlawfully detained by the warden of the Alcatraz Penitentiary, that he had been indicted in the District Court for North Dakota under an Act of May 18, 1934, Section 2, 12 U.S.C.A. § 588b, the indictment being in two counts, one for robbery of an insured bank and the other for jeopardizing the life of officers of the bank in the course of the robbery; that he plead guilty in both counts and was sentenced to ten years under the first and fifteen years under the second (commencing at the expiration of sentence imposed under count one). He charged that in specific instances, which he named, his arraignment was not in conformity with his constitutional rights.

While the Supreme Court reversed the lower court and directed that the writ of

habeas corpus should issue on other grounds, in so far as the question here is concerned it ruled that the District Court was without jurisdiction to consider the petition since the petitioner was not, at the time he filed his petition for Writ of Habeas Corpus, serving an invalid or void sentence. The Court recognized and reaffirmed its rule on this question laid down more than one hundred years ago in Ex parte Watkins, 28 U.S. 193, 3 Pet. 193, 7 L.Ed. 650 and which was recently discussed at length in McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238. It is there pointed out that diligent research into the history of habeas corpus proceedings, both in the United States and in England, failed to disclose any case where the writ was sought or used either before or after conviction as a means of securing a judicial decision of any question, which, even if determined in the prisoner's favor, could not have resulted in his immediate release. The opinion also pointed out that the lower Federal Courts had generally denied petitions for the writ where the prisoner was at the time serving a part of his sentence not assailed as invalid. The case of De Bara v. United States, 99 F. 942, 947, from our own Circuit Court of Appeals (C.C.A. 6th), is cited in the footnote to this statement. In the De-Bara case, the Sixth Circuit, speaking through Mr. Justice Day (with him were associated Judges Taft and Lurton), lays down the rule by posing the following question: "Under a writ of habeas corpus the inquiry is, does the judgment exceed the authority of the court, and is the prisoner serving under a sentence beyond the power of the court to impose?" To which the Court adds: "It is true that the cases wherein the writ has been denied, because a part only of the sentence was within the power of the court to impose, have generally been those in which the judgment was of a clearly separable nature, as for costs and imprisonment, where there was power only to impose the one or the other. We see no reason why the rule should be limited to such cases, and think the true principle to be that, before a prisoner can be discharged upon habeas corpus, it must appear that he is serving by virtue of a judgment which the court had no power to impose. As long as he is serving an imprisonment within the limits of a term which the court might lawfully impose, acting within its power and jurisdiction, he cannot be discharged on habeas corpus, no matter how irregular or erroneous the judgment may be."

Thus we find that according to one school of legal reasoning there is no well defined method, by which a prisoner detained under a void judgment, can seek judicial relief after the expiration of the term at which he was sentenced. It would seem strange, on principle, that such should be the law and that one who was unlawfully held in violation of his constitutional rights through the machinery of one of the three coordinated branches of the government, the judiciary, could only find relief through appeal to the executive or the administrative branch of the government. There seems to be a blind spot in the law and a rather vague and uncertain attitude on the part of judges, to say nothing of the prisoner himself, as to what to do in the event one is being held or is about to be held on a void judgment. Certainly under the letter and spirit of our constitutional system such a situation is abhorrent. The way and method of having void judgments declared of record to be such by the proper tribunal should be clear, unequivocal and simple, not only to one versed in the law, but from the standpoint of procedure, that is, what to do, to the prisoner himself.

It is important that both the prisoner and the authorities in whose custody he is should know definitely how many years the aggregate of his several sentences shall make in order to determine when he will be eligible for parole. Mills v. Aderhold, 10 Cir., 110 F.2d 765. In other words, the defendant here should not have to wait until he has served twenty-seven years before he knows whether his time is thirty-two years or fifty-seven years. If he is correct in his contention that the twenty-five year sentence is void, he would be eligible for parole when he had served a total of thirty-two years or before he had commenced the service of the alleged void sentence. If the sentence is not void, he would not be eligible for parole until he has served a third of fifty-seven years. 18 U.S.C.A. § 710.

In the case of Holiday v. Johnston, supra, the rule that courts were not permitted to inquire into orders entered at a term which had expired seems to be modified, and as set out in the quotations, Bronson v. Schulten, supra; United States v. Mayer, supra, the Holiday case [313 U.S. 342, 61 S.Ct. 1017, 85 L.Ed. 1392], after denying on that par-

ticular ground the writ of habeas corpus, says, "his remedy is to apply for vacation of the sentence and a resentence in conformity to the statute under which he was adjudged guilty". While I am not at all satisfied that the well established rule should be abolished without more direct and singular determination of the question than is gathered from this brief sentence, I am convinced that on reason and principle no void judgment should stand and make it necessary for one who is held a prisoner by such judgment, to appeal to another branch of the government for executive clemency to rectify a judicial error. It should be borne in mind that this statement of the Supreme Court was made with the knowledge, as disclosed by the record, that the defendant, Holiday, was sentenced in 1936 and that many terms of court had elapsed since he was sentenced.

As I have heretofore stated, apparently this direct question has been before the Sixth Circuit Court of Appeals in the case of United States ex rel. Coy v. United States, supra. It should be pointed out, however, that the decision of the Court of Appeals affirmed the District Court and was by adoption of the reasoning and authorities of the lower court. Judge Miller stated in his opinion that the question was very close. His opinion was handed down on May 9, 1941, and the opinion in the Holiday case was not handed down until May 26, 1941. It does not appear from the reported case that this Supreme Court authority was called to the attention of the Appellate Court.

In a recent case in the Eastern District of Kentucky, Judge H. Church Ford, on authority of the Holiday case held that the court had jurisdiction to entertain such motion. In that case the defendant was complaining of an order that had been entered at a May 1938 Term of Court. The motion was made on February 20, 1943. United States v. Burgess et al., 50 F.Supp. 164.

In Meyers v. United States, 116 F.2d 601, the defendant was sentenced on October 12, 1936. He made a motion to set aside the sentence on February 6, 1940, and the Appellate Court for the Fifth Circuit apparently approved the action of the District Court in entertaining the motion and held that it had jurisdiction to resentence if the former sentence was void.

In Hammers v. United States, 279 F. 265, 266, Judge Walker speaking for the Fifth

Circuit Court of Appeals said: "The imposition of a void sentence is not an obstacle to the assumption by the court which imposed it of jurisdiction of the convict, in order that a legal sentence may be imposed. Where there is a conviction, accompanied by a void sentence, the court's jurisdiction of the case for the purpose of imposing a lawful sentence is not lost by the expiration of the term at which the void sentence was imposed. The case is to be regarded as pending until it is finally disposed of by the imposition of a lawful sentence."

In Gilmore v. United States, 10 Cir., 124 F.2d 537, 538, this same question was directly considered, and in the light of the Holiday case, the court held that the District Court should entertain jurisdiction on such motion. "The Government advances the preliminary contention that the trial court was without jurisdiction to consider the motion for the reason that it was filed after the expiration of the term at which the judgment was entered, and that therefore the appeal should be dismissed. It is a familiar general rule that in the absence of a statute providing otherwise, a court cannot alter or set aside its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was appropriately initiated during that term. United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129. But in the recent case of Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392, it was sought to present in a proceeding in habeas corpus the contention that two sentences had been erroneously imposed for a single offense. It is fairly apparent that there the term at which the sentences were imposed had long since adjourned. Yet it was held that the remedy was to apply for the vacation of the sentence and a resentence in conformity to the statute under which the accused was convicted. That case is controlling here."

On June 4, 1943, the Circuit Court of Appeals for the Sixth Circuit handed down an opinion in the case of Lockhart v. United States, 136 F.2d 122. The case involved the determination of the question of double jeopardy and an indictment making separate charges under subsections (a) and (b) of Section 588b of Title 12 U.S.C.A.

It was contended by the defendant that he had been twice put in jeopardy for the same offense. To raise this question Lockhart filed in the Court which tried him a document variously styled as "A Bill of Re-

view," an "Original Action to Vacate Judgment No. 4045 C.R." and "An Independent Action at Law."

The questions in these various documents were considered by the court, and treated by the Government, as a request for a new trial and was denied.

In reviewing the question, the Court of Appeals discussed the question of jurisdiction and while it did not expressly refer to the case of United States ex rel. Coy v. United States, supra, it discussed and quoted the rule from Holiday v. Johnston, supra, and applied it to the case before it. This is in effect overruling the Coy case and holding that the court has jurisdiction to consider an order entered at a term which has expired.

■ In the light of. this discussion and the construction which I must place upon the language used in the Holiday and the Lockhart cases, coupled with the fact that I am definitely of the opinion that criminal procedure should provide some method of its own to determine whether or not its judgments are void, even after the term of court has expired at which they were entered, it is my opinion that this Court has jurisdiction to entertain the defendant's motion. In addition to the authorities discussed see Montgomery et al. v. United States, 8 Cir., 134 F.2d 1, and authorities cited in the opinion.

■ The defendant does not complain of the sentences given under Indictment No. 2086. This indictment charges two distinct offenses. First count that the defendant traveled in interstate commerce for the purpose of avoiding prosecution for a felony, the unlawful killing of Arthur Mimms. Second count charged the transportation in interstate commerce of money which they knew to be stolen. It could not be seriously contended that these offenses are not separate and distinct and each one subject to a separate violation from which separate sentences are proper.

■ The first count of Indictment No. 2120 charged a conspiracy to commit a felony against the United States. It is not urged by the defendant, and could not successfully be urged, that this is not a separate offense from either of the counts charged in Indictment No. 2086. United States v. Rabinowich, 238 U.S. 76, 35 S.Ct. 682, 59 L.Ed. 1211; Westfall v. United States, 6 Cir., 20 F.2d 604.

■ The fourth count of Indictment No. 2120 charged the taking and unlawfully abstracting from the mails of $25,000. Without the citation of authorities, it is clear that this violation cannot be considered identical with any of the other charges contained in the separate counts of either indictments. It is a separate and distinct offense requiring additional action on the part of the defendant than that used in committing any of the other offenses charged. It falls well within the rule laid down in Johnson v. United States, 6 Cir., 82 F.2d 500.

This brings us to the consideration of the second and third counts in Indictment No. 2120.

■ It cannot be successfully contended that Congress may not punish successive steps of a transaction without violating the rule against double jeopardy, when the same act or acts constitute infractions of two or more provisions. There may be an offense for each of the provisions violated and the successive steps of a transaction may be punished separately or collectively. This is the language used in the case of Durrett v. United States, 5 Cir., 107 F.2d 438, in support of which the opinion cites Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505; Bandy v. Zerbst, 5 Cir., 99 F.2d 583; Fleisher v. United States, 6 Cir., 91 F.2d 404; Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153. Cf. Flemister v. United States, 207 U.S. 372, 28 S.Ct. 129, 52 L.Ed. 252.

The rule is so well settled that further discussion or citation of authority would be superfluous.

■ The real question to be determined is what Congress intended to make the offense. In the indictment in the instant case the fourth count charged a violation of Section 317. The offense was the taking of mail matter from the lawfully constituted custodian of the post office establishment of the United States Government. This is made a distinct offense by Section 194 of the Criminal Code and is aimed primarily at the protection of the mail itself. Aside from the protection of the mails, Congress enacted Section 197 of the Criminal Code, which had for its primary purpose, not the protection of the mails except incidently, but the protection of the

custodian of the mails. It cannot be seriously contended that there is any identity of the offenses charged by these two sections of the Criminal Code. In Durrett v. United States, supra, the court had before it the consideration of the Act of May 18, 1934, as amended by the Act of August 24, 1937, c. 747, 50 Stat. 749, 12 U.S.C.A. § 588b. This Section is divided into paragraphs (a) and (b). The first, under (a) making it an offense in the robbing of a bank to use force and violence and, under (b), making it a different and distinct offense in robbing the bank to assault or put in jeopardy the life of any person by the use of a dangerous weapon or device. The Court in holding that only one offense was committed said that the ingredients of the offense charged were so identical that the same facts would sustain any one of the counts; that the use of dangerous weapons and the putting in jeopardy the life of the person named in the counts were but the means used in committing the offense.

██ A study of the second and third counts in indictment No. 2120 in the instant case must lead to the identical conclusion as that reached by the court in the Durrett case. The second count charges that this defendant, with others, did feloniously assault Arthur Mimms, a custodian of the mails. The third count charges that this defendant, with others, did feloniously assault, wound and kill Arthur Mimms, a person having lawful custody of the United States mail. The third count thus charges only an aggravated method or manner of assault or the doing of the identical thing charged in the second count. There is not any different or additional fact necessary to establish the third count than there is needed to establish the second, bearing in mind that the intent and purpose of Congress was to protect a custodian of the mails, it is made unlawful to assault such custodian. That assault may be carried out two ways, either with or without the use of weapons. That is, it may be aggravated or mitigated by the particular method and manner of the offender. If he chooses to use the lesser of the two named methods, that is without the use of weapons, he may receive a maximum sentence of ten years. If he chooses to use the aggravated method, that is by wounding or putting in jeopardy, by the use of dangerous weapons, the life of the mail custodian, he may receive a maximum sentence of twenty-five years. The crime charged is the assault and that assault can only be in one or the other, not both, of the methods named in the statutes.

In Hewitt v. United States, 110 F.2d 1, 11, the Circuit Court of Appeals for the Eighth Circuit, in passing upon questions raised in connection with the bank robbery statute (18 U.S.C.A. § 588b), approved and followed the rule in the Durrett case. I quote the following language from the opinion: "We think that the conclusion reached by the Fifth Circuit in the case of Durrett v. United States, supra, is correct. Congress, in enacting Sections 588b and 588c, was dealing with the crime of bank robbery, and not with forcible taking, putting in fear, assault, putting lives in jeopardy, killing and kidnapping as distinct crimes. In effect, Congress created three classes of bank robbery according to degree; first, that which was accompanied by force or putting in fear; second, that which was accompanied by assault or putting lives in jeopardy; and, third, that which was accompanied by killing or kidnapping. Proof of robbery of the second class would also prove robbery of the first class, and proof of robbery of the third class would prove robbery of both the first and the second classes."

I think this is a logical and inescapable conclusion and must be applied in the case at bar. It is my judgment that sentences given under both counts of Indictment 2086 were valid; that sentences given under counts one, three and four of Indictment No. 2120 were valid, but that the sentence given under the second count of Indictment No. 2120 is not valid.

I believe it is necessary that the defendant, Floyd Bruce, be brought before the Court for resentence. Meyers v. United States, supra.

In view of the conclusions reached it will not be necessary to determine the second question raised by the motion. Since there is to be a resentence the question of time for appeal after sentence is moot.

Orders in conformity with this opinion are this day filed.